UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :
: No.
v.  :
:
HAYES D. HORNER, JR.,  :
Defendant  :

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1
### Wire Fraud
### 18 U.S.C. § 1343

### I. Introduction

At times material to the Indictment:

### Relevant Individuals and Entities

1. Defendant HAYES D. HORNER, JR. resided in or about Berwick, Columbia County, within the Middle District of Pennsylvania.

2. Horner's Towing & Recovery LLC was a limited liability company incorporated in the Commonwealth of Pennsylvania, with a business address located in Berwick, Pennsylvania. Horner's Towing & Recovery LLC was incorporated on or about January 18, 2006, and was owned and controlled by HORNER.

3. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA included maintaining and strengthening the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of those efforts, the SBA enabled and provided for loans with government-backed guarantees to small business owners through financial institutions and other lenders. The SBA also provided direct loans.

4. Bank #1 was a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC") and headquartered in Berwick, Pennsylvania.

5. Bank #2 was a financial institution insured by the FDIC and headquartered in Pittsburgh, Pennsylvania.

6. Victim #1 was a deceased individual who formerly lived in or about Peoria, Arizona.

7. Victim #2 was an individual who lived in or about Longmeadow, Massachusetts.

## The Economic Injury Disaster Loan Program

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 that provided emergency financial assistance to millions of Americans suffering financial difficulties from the economic impact of the COVID-19 pandemic. One source of relief provided by the CARES Act was the expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide low-interest financing (including forgivable $10,000 advances) to small businesses and other eligible entities. The CARES Act authorized the SBA to provide EIDL loans to eligible small businesses experiencing substantial financial disruption resulting from the COVID-19 pandemic.

9. To obtain an EIDL loan, a qualifying business was required to submit an application directly to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was

3

true and correct to the best of the applicant's knowledge.

10. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the United States Treasury.

11. EIDL proceeds could only be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits or for expansion of a business.

## II. The Scheme to Defraud

12. The object of the scheme was for HAYES D. HORNER, JR. and his coconspirators to enrich themselves by fraudulently obtaining EIDL funds through misrepresentations and false documentation.

13. On or about May 27, 2020, HORNER's coconspirators submitted and caused to be submitted to the SBA an EIDL loan application on behalf of Victim #2, and without Victim #2's knowledge, containing material misstatements, by use of the internet and interstate

and international wires.

14. On or about June 24, 2020, HORNER's coconspirators submitted and caused to be submitted to the SBA an EIDL loan application on behalf of Victim #1, at the time Victim #1 was already deceased, containing material misstatements, by use of the internet and interstate and international wires.

15. On or about June 30, 2020, HORNER opened and caused to be opened a business checking account in the name of Horner's Towing & Recovery LLC with Bank #1.

16. On or about July 2, 2020, HORNER opened and caused to be opened a business checking account in the name of Horner's Towing & Recovery LLC with Bank #2. The account was opened with the deposit of a negotiated instrument valued at $47,147. On or about July 7, 2020, Bank #2 deemed the negotiated instrument altered and fictitious, and rejected the funds.

17. Between on or about July 2, 2020 and July 14, 2020, HORNER and his coconspirators, aiding and abetting one another, deposited, caused to be deposited, and attempted to deposit EIDL funds issued by the SBA, by use of interstate wires, as a result of the EIDL applications submitted on behalf of Victim #1 and Victim #2, to the

business checking accounts in the name of Horner's Towing & Recovery LLC at Bank #1 and Bank #2, as summarized below:

    a. On or about July 7, 2020, a deposit of $98,300 in EIDL funds credited to the business checking account in the name of Horner's Towing & Recovery LLC at Bank #1. The funds were accepted, but subsequently returned to the SBA by Bank #1;

    b. On or about July 7, 2020, a deposit of $149,900 in EIDL funds credited to the business checking account in the name of Horner's Towing & Recovery LLC at Bank #2;

    c. On or about July 8, 2020, an attempted deposit of $149,900 in EIDL funds into the business checking account in the name of Horner's Towing & Recovery LLC at Bank #1. The funds were rejected by Bank #1;

    d. On or about July 14, 2020, an attempted deposit of $1,000 in EIDL funds into the business checking account in the name of Horner's Towing & Recovery LLC at Bank #1. The funds were rejected by Bank #1; and

    e. On or about July 14, 2020, a deposit of $9,000 in EIDL advance funds credited to the business checking account

        in the name of Horner's Towing & Recovery LLC at Bank #2.

18. Between on or about July 6, 2020 and July 15, 2020, HORNER obtained, withdrew, and used approximately $58,131.02 in EIDL funds deposited into the business checking account in the name of Horner's Towing & Recovery LLC at Bank #2. HORNER obtained, used, and withdrew those funds through a series of debit card transactions and cash withdrawals at automated teller machines and from bank tellers, all occurring within the Middle District of Pennsylvania. The funds were used for personal, instead of business expenses.

19. On or about July 7, 2020, HORNER sent and caused to be sent an international wire transfer request to Bank #1, requesting a wire of $94,500 in EIDL funds to be sent from the business checking account in the name of Horner's Towing & Recovery LLC at Bank #1, to the Bank of China, for a recipient located in Hong Kong. In addition to the wire transfer request, HORNER forwarded and caused to be forwarded to Bank #1 an electronic mail communication from HORNER's coconspirator, containing the wire transfer instructions. The requested wire transfer was not related to legitimate business

purposes. Bank #1 did not honor the wire transfer request, and subsequently closed the business checking account in the name of Horner's Towing & Recovery LLC.

20. On or about July 14, 2020, HORNER sent and caused to be sent a wire transfer request to Bank #2, requesting a wire of $70,000 in EIDL funds to be sent from the business checking account in the name of Horner's Towing & Recovery LLC at Bank #2, to an account at Bank of America. The requested wire transfer was not related to legitimate business purposes. Bank #2 did not honor the wire transfer request, and subsequently froze the remaining $100,583.66 in EIDL funds located within the business checking account in the name of Horner's Towing & Recovery LLC.

### III. Statutory Allegations

21. From on or about May 27, 2020, to on or about July 14, 2020, in the Middle District of Pennsylvania and elsewhere, the defendant,

HAYES D. HORNER, JR.,

aiding and abetting others known and unknown to the United States Attorney, and having devised and intended to devise the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, and for the purpose of executing the above-described scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds:

| Approximate Date of Wire | Description |
|---|---|
| On or about July 7, 2020 | Interstate wire transfer of $149,900 from the SBA's Financial Management System to the United States Treasury, for deposit in the business checking account in the name of Horner's Towing & Recovery LLC at Bank #2. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

22. The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982.

23. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, the defendant,

HAYES D. HORNER, JR.,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982, any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offenses, including but not limited to:

   a. $100,583.66 in funds seized from Bank #2, account number 90-1649-6523 in the name of Horner's Towing & Recovery LLC, on or about June 28, 2021, currently in the possession of the United States Marshals Service.

24. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982.

Date: 8/30/21

BRUCE D. BRANDLER
Acting United States Attorney

By: _____

PHILLIP J. CARABALLO
Assistant United States Attorney